UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SVGRP LLC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SOWELL FINANCIAL SERVICES, LLC, et al.,<br><br>    Defendants. | Case No. 5:16-cv-07302-HRL<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 19 |

In this diversity action, plaintiffs SVGRP, LLC (SVGRP) and Concert Wealth Management, Inc. (Concert) sue for alleged breach of contract, fraud, libel/slander, and unfair business practices. In sum, they claim that defendant Sowell Financial Services, LLC (Sowell Financial) entered into an agreement with SVGRP to reap the benefits of a transfer of Concert's advisor representatives and assets, with no intent of following through with its end of the bargain.

The court granted defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss the complaint, with leave to amend. The contract claim was dismissed on the ground that the Master Service Agreement (Master Agreement) between SVGRP and Sowell Financial is indefinite with respect to the compensation to be paid to SVGRP. The fraud claim was dismissed because the complaint failed to allege fraud with sufficient specificity. The court dismissed the claim for libel/slander because the complaint did not allege sufficient facts providing context or meaning, such that the

alleged statements in question could reasonably be interpreted as defamatory. Because plaintiffs' unfair business practices claim depended upon the existence of a viable substantive claim for relief, it too was dismissed.

Plaintiffs timely filed a First Amended Complaint (FAC) re-alleging the same claims for relief. Pursuant to Fed. R Civ. P. 12(b)(6), Sowell Financial and defendant William C. Sowell (Sowell) move to dismiss the FAC, arguing that plaintiffs still fail to state a plausible claim for relief. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the court denies the motion.[1]

**BACKGROUND**

The facts, as now alleged in the FAC, are as follows:

Concert, a Registered Investment Advisor (RIA) with the Securities Exchange Commission, provided regulatory services, as well as office and technical support to multiple investment advisor representatives, who were all registered with Concert. The representatives' client funds are held by financial custodians, such as Fidelity.

In July 2016, Fidelity notified Concert that Fidelity required a different RIA to provide regulatory services to Concert's investment advisors who used the Fidelity platform. Concert says that, at that time, it had 26 advisors using the Fidelity platform and $700 million in client funds managed by those advisors, generating over $7 million in annual revenues. Concert was required to find a suitable RIA and transfer its regulatory services by the end of October 2016.

Because Concert did not want to lose advisor representatives using the Fidelity platform (and corresponding assets under management), Concert's principals (Felipe and Elizabeth Luna) created SVGRP, a separate entity that would provide office and technical support to the advisor representatives. Concert then began its search for an RIA that could provide the advisors with regulatory services, as required by Fidelity. Sowell Financial was one of three RIAs Concert identified as a viable candidate.

According to plaintiffs: Concert, SVGRP, and Sowell Financial agreed that Concert would

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

2

facilitate the transition of its advisors to Sowell Financial under the same terms as the advisors' contracts with Concert. (FAC ¶ 15). Additionally, the parties reportedly also agreed that Sowell Financial would enter into a Master Agreement that would allow Sowell Financial to retain SVGRP to provide the advisors with office and technical support, using Concert's proprietary software (Omniscient), and under the same terms as the advisors' contracts with Concert. (Id.; Dkt. 19-1, FAC Ex. B at ECF p. 22).

Claiming that it was under exceptional time pressure to find a suitable RIA and effect the transfer of regulatory services, Concert says that on or around August 9, 2016 it entered into a written Mutual Non-Disclosure Agreement with Sowell Financial that allowed the parties to exchange confidential and proprietary information. As part of its disclosures, Concert says it provided Sowell Financial with a list of its advisors and customers, as well as the advisors' contact information. The FAC goes on to allege that due to time constraints imposed by Fidelity, Concert and Sowell Financial began to transition advisors from Concert to Sowell Financial in September 2016 before the Master Agreement was executed.

The Master Agreement was executed on September 26, 2016 by SVGRP and Sowell Financial. (Dkt. 19-1, FAC, Ex. B). In relevant part, the Master Agreement's "Compensation" clause provides: "In exchange for the Services provided hereunder, [Sowell Financial] shall pay to SVGRP a percentage of fees, commissions, or payments that it receives from [advisors] pursuant to the [Sowell Financial/advisor] agreements entered into [sic] the [advisors] formerly registered with [Concert] as set forth in each Statement of Work attached hereto as Exhibit A." (Id. ¶ 3). The FAC alleges that the referenced Statements of Work meant the prior agreements between Concert and its advisors that, among other things, set out the percentage of fees that would be paid to the advisor and the percentage that Concert retained. (Id. ¶ 19). The FAC further alleges that the prior Concert-advisor agreements were disclosed to defendants and were to be appended to the Master Agreement as each advisor transferred from Concert to Sowell Financial. (Id.). Although not specifically alleged in the FAC, there is no dispute that no Statements of Work were appended to the Master Agreement.

The Master Agreement contains an integration clause that provides:

3

> **Entire Agreement; Amendment**. This Agreement is intended by the Parties to be the full and final expression of their agreement and shall not be contradicted by evidence of any prior written agreement or any oral agreements or representations. The captions in the Agreement are for reference purposes only. This Agreement may not be amended, modified, altered, or changed in any respect whatsoever except by a further written agreement signed by both Parties. All exhibits and documents referenced by this Agreement are made a part of this Agreement.

(FAC, Ex. B ¶ 11.a.).

Following execution of the Master Agreement, the majority of Concert advisors who used the Fidelity platform transitioned to Sowell Financial. And, Sowell allegedly sent an email blast to all representatives, welcoming them to Sowell Financial and stating: "So 'what's the deal?' Let me be very clear; this was not a merger, acquisition or a buyout. This structure is one that will allow the operations and service team in San Jose to stay intact along with the ongoing development of Omniscient. Under a service agreement, we will utilize the San Jose office to facilitate the services they have been providing you." (FAC ¶ 23). Sowell closed stating, "In short, there are no new systems to learn, you won't lose your data, you don't need to negotiate new contracts, and your contracts won't change." (Id.).

At the same time, Sowell reportedly sent correspondence to his previous advisors, stating: "We are onboarding advisors from a 'beleaguered' competitor, which has provided a tremendous opportunity for Sowell Management Services. At the end of the day, we anticipate tripling our AUM (assets under management) to over 1.5 billion with over 10,000 accounts. . . . This gives us much better negotiating power with our custodians for transactional based pricing as well as asset based pricing. We have already been elevated with Fidelity and TD AmeriTrade to a higher level service teams and relationship managers." (FAC ¶ 24).

SVGRP says it provided back office and technical services to the advisor representatives in September, October, and November 2016; and, for these months, Sowell Financial paid SVGRP what plaintiffs claim was the agreed-upon compensation contemplated by the Master Agreement, i.e., 100% of the fees retained from the advisor representatives (less agreed expenses), pursuant to the advisors' prior contracts with Concert (now being continued with Sowell Financial). (FAC ¶ 25).

4

By November 14, 2016, plaintiffs say that approximately $700 million in assets and $7 million in annual revenues had been transferred from Concert to Sowell Financial. (Id. ¶ 26).

However, on November 29, 2016, Sowell Financial sent a letter notifying SVGRP and Concert that it was terminating the Master Agreement pursuant to Paragraph 4 of the contract, and advising that "[e]ffective immediately, [Sowell Financial] will no longer accept services from [SVGRP]." (FAC ¶ 27, Ex. D). The letter goes on to state: "Additionally, considering there were no agreed upon terms in place for compensation, the money sent to [SVGRP] for the November Billing was sent in error. Please return these funds immediately to [Sowell Financial]." (Id.) SVGRP alleges that the letter did not comply with the Master Agreement's termination provisions.

Further, plaintiffs allege that, immediately afterward, defendants "engaged in a campaign of disparaging" plaintiffs (and Felipe and Elizabeth Luna), both orally and in writing, with the aim of harming their reputations and luring additional Concert advisors to join Sowell Financial. For example, the FAC alleges that Sowell sent a letter to all of Concert's advisors, falsely telling them that Concert and the Lunas were interfering in Sowell Financial's management and that Fidelity might remove the advisors from the Fidelity platform. (Id. ¶ 46). Sowell also allegedly sent letters to all of Concert's advisors (whether or not they had transferred to Sowell Financial), "falsely claiming that Felipe Luna and Elizabeth Luna breached the agreement with [Sowell Financial] and claimed that Concert was improperly monitoring [Sowell Financial's] e-mails and blocking communications." (FAC ¶ 28). Then, in April 2017, Sowell reportedly sent an email to Concert advisors, "falsely stating that Concert and Felipe Luna 'violated state and/or federal law' and as such, the [advisor] was free to breach its agreement with Concert 'for cause' and come join Sowell." (Id. ¶ 29).

The FAC further alleges that, after termination of the Master Agreement, Sowell Financial improperly used forms suggesting to Concert's clients that Concert endorsed their transition to Sowell Financial. In relevant part, the form stated: "Concert Wealth Management intends for TD AmeriTrade Institutional (TDA) to continue to provide brokerage and custody services to your account(s). By your signature below, you are appointing Sowell Management Services as your agent and attorney-in-fact . . . to provide instructions to TDA under the same terms as your

5

previous authorization to Concert Wealth Management." (Id. ¶ 30, Ex. E).

This lawsuit followed.

Defendants contend that, even with the additional allegations of the FAC, plaintiffs still fail to state a plausible claim for relief. For the reasons to be discussed, the court denies the motion.

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. Id. (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted) However, only plausible claims for relief will survive a motion to dismiss. Iqbal, 129 S.Ct. at 1950. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949.

Documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion. See

1  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990);

2  MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

While leave to amend generally is granted liberally, the court has discretion to dismiss a claim without leave to amend if amendment would be futile. Rivera v. BAC Home Loans Servicing, L.P., 756 F. Supp.2d 1193, 1997 (N.D. Cal. 2010) (citing Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996)).

**DISCUSSION**

**A.     Breach of Contract**

SVGRP renews its contract claim against Sowell Financial. As discussed, the contract provides that Sowell Financial was to pay SVGRP "a percentage of fees, commissions, or payments that it receives from [advisors] . . . as set forth in each Statement of Work attached hereto as Exhibit A." (Dkt. 19-1 at ECF p. 23). The controversy in this case arises from the fact that the referenced Statements of Work were meant to be, but are not, appended to the contract. Sowell Financial maintains that there were no mutually agreed terms of consideration and that the contract's terms are not sufficiently definite to give rise to a contractual obligation with respect to SVGRP's compensation.

Plaintiffs contend that the parties intended, and defendants fully understood, that the Statements of Work meant the prior Concert-advisor agreements and, specifically, that Sowell Financial would pay to SVGRP 100% of the fees Concert previously retained from its advisors for the provision of both regulatory services and office/technical support, less certain expenses. (See, e.g., FAC ¶¶ 15, 19, 21, 25; Ex. B at ECF 23-24). In other words, there was to be no fee splitting as between Sowell Financial and SVGRP, even though each was now to provide services previously provided by Concert alone. Instead, plaintiffs claim that the deal was that Sowell Financial would reap the benefits of the acquisition of assets under management from Concert, resulting in a considerably expanded asset pool and a bump up in relationships with businesses like Fidelity.

Defendants contend that plaintiffs' allegations are implausible insofar as they suggest that Sowell Financial would have agreed not to keep at least some portion of the fees generated by

7

advisors for the regulatory services Sowell Financial was to provide. And, pointing out that the Master Agreement contains an integration clause, defendants argue that plaintiffs' proffered explanation as to the Master Agreement's terms re SVGRP's compensation necessarily relies on improper parol evidence that cannot be used to supply missing compensation terms which, defendants say, are unambiguous.

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. If possible, the intention of the parties is to be ascertained from the writing alone. Id. § 1639. Accordingly, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Id. § 1638. Parol evidence is admissible to construe a contract when its language is ambiguous and "'the meaning urged is one to which the written contract terms are reasonably susceptible.'" Casa Herrera, Inc. v. Beydoun, 32 Cal.4th 336, 343 (2004) (citation omitted) (quoting BMW of N. Am., Inc. v. New Motor Vehicle Bd., 162 Cal. App.3d 980, 990 n.4 (1984)). The pertinent analysis requires a two-step process: First, the court provisionally receives all credible evidence offered to prove the parties' intention to determine whether the contract language is reasonably susceptible to the interpretation urged by the offering party. Lennar Mare Island, LLC v. Steadfast Ins. Co., 176 F. Supp.3d 949, 963 (E.D. Cal. 2016). If so, then the extrinsic evidence may be admitted to aid in the second step of the process, i.e., contract interpretation. Id. at 963-64.

Plaintiffs do not dispute that the Master Agreement contains an integration clause, but they claim they have evidence that will explain, not contradict, the Master Agreement's term. They also allege that the referenced Statements of Work were incorporated by reference into the Master Agreement. (FAC ¶ 19). As discussed above, the Master Agreement's integration clause states that the contract's terms "shall not be contradicted by evidence of any prior written agreement or any oral agreements or representations" and that "[a]ll exhibits and documents referenced by this Agreement are made a part of this Agreement." (Id., Ex. B ¶ 11.a.). At the very least, plaintiffs believe that their evidence may fall within one or more exceptions to the parol evidence rule. In any event, plaintiffs argue that the fact that Sowell Financial (initially) paid SVGRP what

8

1  plaintiffs claim was the agreed-upon compensation, demonstrates that defendants fully understood what was contemplated by the contract and agreed to it. (FAC ¶ 25).

This court is not at all sure that plaintiffs would prevail on this point on summary judgment or at trial. But, at this stage, and on the present record, the court cannot conclusively interpret the contract or speculate about what evidence plaintiffs might seek to admit, and then decide whether any such evidence will be barred by the parol evidence rule. Nor does the court find defendants' disagreement as to plaintiff's proffered interpretation of the Master Agreement to be sufficient grounds to find the FAC's allegations implausible within the meaning of Iqbal or Twombly. Based on the FAC's allegations, which for present purposes are deemed true and construed in a light most favorable to plaintiffs, the court finds that the FAC pleads enough to allow this claim to proceed for now. Defendants' motion to dismiss the contract claim is denied.

### B.  Fraud

This claim is asserted by both plaintiffs against Sowell Financial. Plaintiffs allege that Sowell Financial never intended to proceed with the business arrangement the parties allegedly agreed upon. Instead, plaintiffs claim that Sowell Financial induced Concert to transfer its advisors, $700 million in assets, and $7 million in annual revenues, and then cut plaintiffs out of the deal, so that Sowell Financial could keep all the business and assets for itself. (Complaint ¶ 37). Defendant argues that this claim must be dismissed because the FAC still fails to allege fraud with sufficient specificity.

To state a claim for fraud under California law, a plaintiff must allege:  (1) a misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. Lazar v. Super. Ct., 12 Cal.4th 631, 638 (1996) . "Promissory fraud is a subspecies of fraud. A plaintiff asserting a promissory fraud claim must plead and prove that the defendant made a promise to him that it had no intention of performing." UMG Recordings, Inc. v. Global Eagle Entertainment, Inc., 117 F. Supp.3d 1092, 1109 (C.D. Cal. 2015); see also Hsu v. OZ Optics Ltd., 211 F.R.D. 615, 620 (N.D. Cal. 2002) (stating that promissory fraud "is cognizable when a party enters into an agreement without intending to be bound by its terms.").

9

However, "nonperformance alone will not support a finding of promissory fraud." UMG Recordings, Inc., 117 F. Supp.3d at 1110. "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." Id. at 1109-10; see also Hsu, 211 F.R.D. at 620 (same).

"[P]romissory fraud is not exempted from the strictures of [Fed. R. Civ. P.] Rule 9(b), and a plaintiff is required to plead facts from which the Court can infer that the allegedly fraudulent statements were actually false when made." Hsu, 211 F.R.D. at 620 (citation omitted). This means that allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). To survive a motion to dismiss, "'allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Id. (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).

As discussed above, the FAC alleges that Concert, SVGRP, and Sowell Financial agreed that Concert would facilitate the transition of its advisors to Sowell Financial, and Sowell Financial would, in turn, enter into the Master Agreement, whereby SVGRP would continue to provide the advisors with office and technical support. (FAC ¶ 15). Sowell Financial correctly notes that the FAC alleges facts that tend to show that Sowell Financial did intend to perform---e.g., Sowell's email to Concert advisors telling them about the business arrangement; there was actual performance under the Master Agreement; Sowell acknowledged the agreement in the media; and that the Master Agreement was mutually beneficial to both sides. However, the FAC also alleges that:

- Before signing the Master Agreement, Sowell reportedly told a Concert advisor that Sowell Financial was in a win-win situation, and had no way to lose, whether or not the deal went through. (FAC ¶ 38).

10

- At the same time Sowell sent an email to Concert's advisors, he told Sowell Financial advisors that the arrangement presented a "tremendous opportunity for Sowell Management Services," with anticipated tripling of assets under management "to over 1.5 billion with over 10,000 accounts." (Id. ¶ 24).
- Approximately two months after the Master Agreement was executed, and just after the transfer of Concert's assets under management, defendants sent a letter advising that it was terminating the Master Agreement. (Id. ¶ 27, Ex. D).
- Sowell Financial falsely continued to suggest to Concert's clients that Concert endorsed the clients' transfer to Sowell Financial, even after defendants terminated the Master Agreement. (Id. ¶¶ 30, 40).

Viewing the FAC's allegations as a whole, and construing them in a light most favorable to plaintiffs, the court concludes that the FAC sufficiently alleges a claim for fraud. Defendants' motion to dismiss this claim is denied.

### C. Slander and Libel

The elements of a claim for defamation, which may be brought as a claim for slander or libel are "1) a publication, 2) that is false, 3) defamatory, and 4) unprivileged, and 5) that has a natural tendency to injure or that causes special damage." Wilson v. Florida Dep't of Revenue, No. 14-cv-04726-JCS, 2015 WL 136557 at *12 (N.D. Cal., Jan. 8, 2015) (citing Taus v. Loftus, 40 Cal.4th 683, 720, 54 Cal.Rptr.3d 775, 151 P.3d 1185 (2007)). "While the exact words or circumstances of the defamation need not be alleged, the substance of the defamatory statement must be alleged to state a claim." Id. (citing Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1314 (N.D. Cal. 1997)).

This claim, alleged by all plaintiffs against all defendants, previously was dismissed because plaintiffs failed to allege sufficient facts providing context or meaning, such that the alleged statements attributed to defendants reasonably could be interpreted as defamatory. Indeed, the original complaint did little more than assert that the parties entered into an agreement; that defendants terminated that agreement; and that defendants then made statements to advisors that Concert breach the agreement and that the Lunas violated the law and interfered with Sowell

11

Financial's management. Defendants argue that the FAC does nothing to address that deficiency. The court disagrees.

As discussed above, the FAC now includes additional fact allegations indicating that the allegedly defamatory statements were made by defendants in an effort to impugn plaintiffs (and the Lunas) and to lure additional Concert advisors to Sowell Financial. Viewing the FAC as a whole, and viewing the allegations in the light most favorable to plaintiffs, the court finds these allegations sufficient to state a claim for slander/libel. Defendants' motion to dismiss this claim is denied.

### D. Unfair Business Practices (Cal. Bus. & Prof. Code § 17200)

"Violation of almost any federal, state, or local law may serve as the basis for a UCL claim." Plascencia v. Lending 1st Mortgage, 259 F.R.D. 437, 448 (N.D. Cal. 2009). Because plaintiffs' underlying claims have survived dismissal, defendants' motion to dismiss the § 17200 claim is denied.

## ORDER

Based on the foregoing, defendants' motion to dismiss the FAC is denied.

SO ORDERED.

Dated: November 16, 2017

HOWARD R. LLOYD
United States Magistrate Judge